IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH L. FERGUSON, et al.    :    CIVIL ACTION
                               :
          v.                   :
                               :
VALERO ENERGY CORP., et al.    :    NO. 06-540


MEMORANDUM

McLaughlin, J.                              April 24, 2009


          This is a wrongful death and survivorship action
brought under the Court's diversity jurisdiction concerning the
death of John Jerry Ferguson, Jr.  Mr. Ferguson was killed in an
accident at the Delaware City Refinery, near Wilmington,
Delaware, on the night of November 5, 2005.  Mr. Ferguson was
twenty-nine years old.  He had never married and had no children.
Mr. Ferguson was survived by two brothers, Kenneth and Michael
Ferguson, and his father, John Jerry Ferguson, Sr.

          The plaintiffs in this suit are Kenneth Ferguson and
John Jerry Ferguson, Sr.  Kenneth Ferguson brings claims under
the Delaware Survivor's Act, 10 Del. Code § 3701, as
administrator of his brother's estate and on behalf of any
statutory beneficiaries.  Am. Compl. ¶ 3.  John Jerry Ferguson,
Sr., brings claims under the Delaware Wrongful Death Act, 10 Del.
Code § 3724, in his own right and as the primary beneficiary
under the statute.  Am. Compl. ¶ 2.  After this suit was filed,
John Jerry Ferguson, Sr., passed away on April 22, 2006, less
than six months after the accident that killed his son.

The defendants here are two companies that owned and operated the Delaware City Refinery:  Valero Energy Corporation and Premcor Refining Group, Inc.  The defendants have moved for partial summary judgment on several of the plaintiffs' damage claims, arguing that some of the damages which the plaintiffs seek to recover cannot be awarded under the Delaware Wrongful Death Act or the Delaware Survivor's Act.  They also seek to limit some of the damages that can be awarded under the statutes. The Court will grant the motion in part and deny it in part.

I.   <u>The Statutes at Issue</u>

A.   <u>The Wrongful Death Act</u>

The Delaware Wrongful Death statute, 10 Del. Code § 3724, permits specified relatives to bring an action to compensate them for the harm they have suffered from the decedent's death.  The statute states that, in fixing the amount of damages under the statute, the factfinder shall "consider all facts and circumstances" and fix a sum "as will fairly compensate for the injury resulting from the death."  § 3724(d).

In determining the amount of the award, the factfinder "may consider" five specified items of damage.  These five items are:  1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased; 2) loss of contributions for

support; 3) loss of parental, marital and household services;  4) reasonable funeral expenses not to exceed $7,000 (or an amount specified in the law governing pensions for state employees and not applicable here); and 5) mental anguish.  § 3724(d)(1)-(5).  The wrongful death statute specifically restricts recovery of mental anguish damages to the decedent's surviving spouse, children, and persons to whom the deceased was in loco parentis.  If there are no such persons, then mental anguish damages may be recovered by parents and persons in loco parentis to the deceased.  If there are still no such persons, then such damages may be recovered by siblings.  § 3724(d)(5).

Because the Wrongful Death Act is in derogation of the common law, it is to be strictly construed.  <u>Magee v. Rose</u>, 405 A.2d 143, 146 (Del. Super. Ct. 1979).


B.   <u>The Survivor's Act</u>

The Delaware Survivor's Act, 10 Del. C. § 3701, permits a decedent's estate to bring claims on behalf of the decedent.  The statute provides that a decedent's causes of action shall survive his or her death and may be prosecuted by the executors or administrators of the estate:

> All causes of action, except actions for
> defamation, malicious prosecution, or upon
> penal statutes, shall survive to and against
> the executors or administrators of the person
> to, or against whom, the cause of action
> accrued.  Accordingly, all actions, so

> surviving, may be instituted or prosecuted by
> or against the executors or administrators of
> the person to or against whom the cause of
> action accrued. . . .

10 Del. Code § 3701.

Like the Wrongful Death statute, the Survivor's Act, being in derogation of the common law, is to be strictly construed.  <u>Magee</u>, 405 A.2d at 146.


II.  <u>Analysis of the Damages Challenged by the Defendants</u>

The plaintiffs' amended complaint lists eight items of damage sought by John Jerry Ferguson, Sr., under the Delaware Wrongful Death Act and five items of damage sought by Kenneth Ferguson under the Delaware Survivor's Act as administrator of his brother's estate.  The defendants challenge most of these items, either in whole or in part.  The Court will discuss first those items of damage sought under the Wrongful Death Act and then those sought under the Survivor's Act.  In evaluating whether summary judgment is appropriate, the Court will view the record in the light most favorable to the plaintiffs and draw all inferences in the plaintiffs' favor.  <u>U.S. ex rel. Kosenske v. Carlisle HMA, Inc.</u>, 554 F.3d 88, 94 (3d Cir. 2009).

A     The Plaintiffs' Claims under the Wrongful Death Act for
      Loss of the Decedent's Contributions to Support

John Jerry Ferguson, Sr., seeks several items of damage
related to the loss of his son's support.  These include claims
for "loss of the value of household services that [John Jerry
Ferguson, Jr.,] would have contributed to his father" and "loss of
contributions for support incurred by the family" as a result of
John Jerry Ferguson, Jr.'s death.  Am. Compl. ¶¶ 82(c); ¶ 82(g).

The defendants concede that these items of damage are
expressly recoverable under the Delaware Wrongful Death Act, which
allows recovery of "loss of contributions for support."
§ 3724(d)(2).  The defendants contend that they are nonetheless
entitled to summary judgment on these claims because the
plaintiffs have insufficient evidence to show that John Jerry
Ferguson, Jr., ever contributed anything to his father's (or his
siblings') support.

As a threshold issue, both the plaintiffs and the
defendants agree that there is no evidence that John Jerry
Ferguson, Jr., contributed to his brothers' support and therefore,
to the extent the amended complaint seeks compensation for loss of
the decedent's contribution toward his brothers' support, such a
claim must be dismissed.

As evidence of John Jerry Ferguson, Jr.'s contribution
to his father's support, the plaintiffs point to the fact that, at
the time of his death, John Jerry Ferguson, Jr., was living with

5

his father and, according to deposition testimony given by Kenneth Ferguson, was helping his father with yardwork, household maintenance, and vehicle repair.  At deposition, Kenneth Ferguson was asked whether John Jerry Ferguson, Jr., was helping his father out "financially or otherwise."  Kenneth Ferguson answered,

> Yeah, he did just about everything around the house as far as upkeep of the house and mowing the grass and taking care of the – he helped my father with his vehicles, he helped with his tractor.  He had a tractor that seemed to always want to break.  He spent a lot of time trying to get it right.

K. Ferguson Dep. at 52-53, attached at Def. Mem. Ex. A.  The plaintiffs contend that this testimony is sufficient to show that the decedent provided household services to his father and contributed to his support.

In their reply brief, the defendants argue that this evidence is too speculative to support a claim for lost support because the plaintiffs have not presented evidence that the father's house or vehicles "actually needed any repairs" during the five months between the decedent's death and the father's death, so any award of damages for the father's loss of support would be based on guesswork.  The defendants also argue that the plaintiffs have failed to offer expert testimony as to the value of the household services allegedly performed by the decedent.

The Court will deny the defendants' motion for summary judgment on John Jerry Ferguson, Sr.'s claim for damages for "loss

6

of the value of household services" and "loss of contributions for support" under the Delaware Wrongful Death Act.  The plaintiffs have presented evidence that the decedent provided household services to his father.  The type of services the decedent did –– mowing the lawn, keeping up the house, and servicing the family vehicles -- are the type that one could reasonably infer would be performed within any given five month period.  As the standard for evaluating a motion for summary judgment requires that the non-movant be given the benefit of every reasonable inference, this is sufficient to prevent summary judgment on John Jerry Ferguson, Sr.'s claim for loss of household services and loss of support.

      B    The Plaintiffs' Claims under the Wrongful Death Act for the Decedent's Lost Wages

As part of the damages for their wrongful death claim, the plaintiffs seek "future or prospective wages that [John Jerry Ferguson, Jr.,] would have contributed to his father and/or left to his estate during his natural lifetime, including any benefits of employment lost due to his death that would have passed to his father, siblings and/or estate."  Am. Compl. ¶ 82(a).  This paragraph makes two separate claims for lost wages.  The first is part of the plaintiffs' claim for contribution, seeking to recover the amount of John Jerry Ferguson, Jr.'s future wages that he would have contributed to his father's support.  The second is a claim for that portion of John Jerry Ferguson, Jr.'s future lost

wages that he would have saved and passed on to his heirs or his estate at his natural death.  The two claims are analytically distinct and the Court will address them separately.

1    Wages that the Decedent Would Have Contributed to
     His Father's Support

As discussed in the previous section, the defendants have sought summary judgment on the plaintiffs' claims for contribution under the Wrongful Death Act on the ground that the plaintiffs have not proffered evidence of such contribution.  The Court has rejected the defendants' argument with respect to the plaintiffs' claims for loss of the decedent's services, finding that the plaintiffs have presented sufficient evidence that John Jerry Ferguson, Jr., did household tasks for his father.  The Court will grant the defendants' motion, however, with respect to the plaintiffs' claim for the future wages that the decedent would have contributed to his father in support.  The plaintiffs have come forward with no evidence that John Jerry Ferguson, Jr., contributed any money, as opposed to services, towards the support of his father.

2    Wages that the Decedent Would Have Left to His
     Estate

The defendants initially did not seek summary judgment on the plaintiffs' Wrongful Death Act claim for "future or

prospective wages that [John Jerry Ferguson, Jr.,] would have
. . . left to his estate during his natural lifetime . . . ."  The
defendants conceded that this item of damages fit within the Act's
provision allowing recovery of damages for "deprivation of the
expectation of pecuniary benefits to the beneficiary or
beneficiaries that would have resulted from the continued life of
the deceased."  § 3724(d)(1).  See Def. Mem. at 7.

　　　　In their opposition brief, the plaintiffs appeared to
significantly broaden the scope of the lost earnings they were
seeking as damages for wrongful death.  Rather than restricting
their claim to the wages that John Jerry Ferguson, Jr., would have
passed to his estate, they described their claim as one for "lost
future earnings," generally.  Pl. Mem. at 7-8.  In their reply
brief, the defendants objected to this broader characterization of
the plaintiffs' damages, reiterating that the Delaware Wrongful
Death Act does not allow for the recovery of the full amount of a
decedent's lost wages and earnings, but only the amount that a
decedent would have saved and passed on to his estate.  Def. Rep.
Mem. at 2-3.

　　　　At oral argument, the plaintiffs clarified that they
were not seeking to recover John Jerry Ferguson, Jr.'s lost wages
as a separate item of damages.  Instead, plaintiffs' counsel
agreed with the defendants that the damages recoverable under the
Wrongful Death Act are the plaintiffs' lost "expectation of

pecuniary benefits," measured by estimating the decedent's lost future earnings, which "is then reduced by maintenance."  3/4/09 Tr. at 199-202.

The Court agrees with the parties that the Delaware Wrongful Death Act does not allow for the recovery of all of the decedent's lost future earnings.  Delaware courts have consistently held that the Wrongful Death Act allows the recovery only of that portion of the decedent's lost earnings that would have been saved, over and above the decedent's spending on his maintenance, and passed on to his estate.  See Bradley v. Dionisi, 1988 WL 130411 (Del. Super. Ct. Nov. 17, 1988) (holding that the recovery in a wrongful death action for the death of a child is what the child "probably would have earned, saved and left to his next of kin at the end of his life expectancy"); Lum v. Nationwide Mut. Ins. Co., 1982 WL 1585 (Del. Super. Ct. April 27, 1982) (holding, in a wrongful death claim, "the representatives of the decedent's estate are entitled to recover the amount, discounted to present value, that the decedent would likely have saved from his earnings over the course of his lifetime and left in his estate, but for his wrongful death"); Magee v. Rose, 405 A.2d 143, 147 (Del. Super. Ct. 1979) (holding damages under the Wrongful Death Act are the "sum that the deceased would have probably earned in his business during his life and would have saved from his earnings and left as an estate and which would have gone to

his next of kin"); <u>see also</u> Del. Super. Ct. Online Civil Pattern Jury Instr. § 22.8 (2000 ed.) (providing that damages for wrongful death include "the loss of the expectation of monetary benefits that would have resulted from the continued life of [decedent's name]; that is, the expectation of inheritance that [name of family beneficiaries] have lost").

C    The Plaintiffs' Claims under the Wrongful Death Act for Mental Anguish

The plaintiffs' complaint seeks damages under the Wrongful Death Act for mental anguish suffered by the decedent's brothers (Am. Compl. ¶ 82(f)) and by the decedent's father (Am. Compl. ¶ 82(e)).

The defendants have moved to dismiss the brothers' claims for mental anguish damages on the ground that the Wrongful Death Act expressly states that these damages can be recovered by siblings only if there is no surviving spouse, children, or parents.  The plaintiffs have conceded that the brothers have no claim under the Act because John Jerry Ferguson, Jr., was survived by his father.  The Court will accordingly grant summary judgment on this claim.

The defendants, although conceding that John Jerry Ferguson, Sr., can bring a claim for mental anguish under the Wrongful Death Act, have moved to limit his claims for these damages to the five months between his son's accident and his own

death.  The plaintiffs have not responded to the defendants'
argument on this point.  Although the Court sees little need for a
ruling on what would seem the self-evident fact that John Jerry
Ferguson, Sr., cannot recover damages for mental anguish suffered
after his death, the Court will grant the defendants' motion on
this point as unopposed.


D    The Plaintiffs' Claims under the Wrongful Death Act for
     "Any and All Other Damages"

     In listing the damages sought under the Wrongful Death
Act, the plaintiffs' amended complaint includes a catch-all
provision asking for "any and all other damages recoverable as a
matter of law."  Am. Compl. ¶ 82(h).  The defendants move for
summary judgment on this damage claim, arguing that the plaintiffs
have failed to identify any legal theories or factual allegations
that would support the award of these unspecified "other damages."
The plaintiffs do not address this issue in their opposition
brief.  The Court will therefore grant the defendants' request for
summary judgment on this provision as unopposed.


E    The Plaintiffs' Claims under the Survivor's Act for the
     Decedent's Hedonic Damages

     In their Survivor's Act claim, the plaintiffs seek "any
and all hedonic damages allowed for the loss of the decedent's
life and enjoyment of future life as permitted by Delaware law or

12

as evidence of a measure of the pain and suffering and mental anguish" of the decedent.  Am. Compl. ¶ 86(c).  The defendants move for summary judgment on this claim arguing that "hedonic damages" are not available under the Delaware Survivor's Act.  In their response to the defendants' motion, the plaintiffs concede that such damages are "not a distinct basis for recovery" under the Survivor's Act, but argue that evidence of such damages may be admissible as evidence of the decedent's pain and suffering.

For their arguments, both the plaintiffs and defendants rely primarily on the decision of United States District Court for the District of Delaware in Sterner v. Wesley College Inc., 747 F. Supp. 263 (D. Del. 1990).  Sterner concerned the death and injury of two college students from a college dormitory fire.  At summary judgment, the defendant college moved to strike the deceased plaintiff's claims for "hedonic damages" under the Delaware Survivor's Act and to bar the testimony of the plaintiff's expert as to such damages.

The Sterner court began its analysis by defining hedonic damages as the value of the lost pleasures of life, separate from the economic value that the decedent would have earned had he not died.  Id. at 272 (citations omitted).  The Sterner court noted that no Delaware court had yet addressed the availability of such damages under the Survivor's Act and that the court would have to predict how the Delaware Supreme Court would rule on the issue.

13

Looking to Pennsylvania case law interpreting the Pennsylvania survivor's statute, upon which the Delaware Survivor's Act had been modeled, the Sterner court concluded that the Delaware Act would not allow a plaintiff to "recover for the hedonic value of the decedent's lost life as distinct base of recovery under the Delaware survival action statute." Id. at 273 (citing Willinger v. Mercy Catholic Med. Ctr., 482 Pa. 441 (Pa. 1978). The Sterner court held that evidence of the hedonic value of the decedent's life could still be introduced at trial to the extent it was relevant to the decedent's pain and suffering. Because of the "brevity" of the period in which the decedent could have experienced pain and suffering, between the start of the fire and his death, the Sterner court stated that it would entertain a later motion by the defendants to exclude such evidence as unlikely to aid the jury. Id. at 273.

This Court agrees with the Sterner court that a plaintiff suing under the Delaware Survivor's Act cannot recover hedonic damages as a separate item of damage, at least under circumstances like those in Sterner and here, where only a brief interval occurred between the decedent's injury and death.

As a threshold issue, it is not clear that Delaware law recognizes a separate award for hedonic damages under any circumstances, irrespective of the Survivor's Act. The parties have cited no decision, and the Court's own research has found

14

none, that has allowed a personal injury plaintiff suing under Delaware law to recover hedonic damages for loss of the enjoyment of life or loss of life's pleasures.  The one case the Court has found to have discussed the issue, other than Sterner, rejected allowing a plaintiff to recover a separate award for hedonic damages under Delaware law.  Winter v. Pa. R.R. Co., 68 A.2d 513 (Del. Super. Ct. 1949).

In Winter, the court refused to allow an amateur pianist who had suffered a crushed finger to amend his complaint to seek special damages for the loss of his enjoyment of life, finding that allowing such an award would be "an unwarranted change in our law of damages as established by long practice."  Id. at 515.  The court held that a jury could nonetheless consider the plaintiff's evidence of his loss of enjoyment of life as part of its general evaluation of damages:  "In evaluating the degree of impairment and in assessing damages, the jury may take into consideration all of the activities -- business, pleasure and otherwise -- which the impairment impedes or prevents."  Id.

Winter was decided over sixty years ago, and since that time a number of jurisdictions have recognized hedonic damages as a separate item of damage in personal injury cases.  See Eyoma v. Falco, 589 A.2d 653, 658-60 (N.J. Super Ct. 1991) (discussing cases).  In the absence of any Delaware decision on the issue since Winter, it is difficult to predict whether the Delaware

15

Supreme Court would recognize a separate recovery for hedonic damages, if the issue were presented to it today.[1]  The Court need not reach this issue, however, because even if Delaware law were to recognize hedonic damages in some circumstances, the Court finds that the Delaware Survivor's Act would not allow such damages to be awarded in a case like this one, where only a short interval passed between the decedent's injury and his death.

Assuming for the sake of this analysis that Delaware law allowed a personal injury plaintiff to recover hedonic damages, then the Delaware Survivor's Act would permit a claim for those damages to survive a plaintiff's death and be brought by the decedent's estate.  The Act provides that "[a]ll causes of action," except those for defamation, malicious prosecution, or those based upon penal statutes, "shall survive" an injured party's death.  10 Del. Code § 3701.

Delaware decisions, however, have generally interpreted the Survivor's Act to allow recovery of only those damages that the decedent incurred between his injury and his death, and not the recovery of future benefits that the decedent would have

---

[1]     In determining an issue of state law in a diversity case, a federal court must predict how the state's highest court would rule on the issue.  In the absence of any guidance from the state's highest court, a federal court may look to intermediate appellate opinions, but may also consider analagous decisions in other courts, scholarly works, and "any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  Koppers Co, Inc. v. Aetna Cas. $ Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996).

enjoyed had he lived.  See Magee, 405 A.2d at 147 (damages
recoverable under the Survivor's Act are "(a) pain and suffering
from the time of injury to the time of death, (b) expenses
incurred in endeavoring to be cured of said injuries, and (c) loss
of earnings resulting from said injuries from the time of injury
to the time of death."); Coulson, 107 A.2d at 925 (same).  The
Court therefore predicts that if Delaware law were to allow for
the recovery of hedonic damages for loss of life's pleasures and
loss of the enjoyment of life, then the Survivor's Act would allow
recovery of such damages only to the extent they were suffered for
the time between the injury at issue and the decedent's death.

        In some circumstances, where the interval between a
decedent's injury and death is lengthy, hedonic damages may be
substantially and analytically distinct from damages for pain and
suffering.  For example, where an injury caused a decedent to
enter a coma for several months before dying, an award of hedonic
damages could compensate for the loss of the ability to enjoy life
during that period, a time in which there might not have been any
conscious pain and suffering.  See, e.g., Eyoma, 589 A.2d at 654,
661-2 (permitting an award of hedonic damages under New Jersey law
to an injured party who, before death, existed for a year "in a
comatose condition, unable to perceive pain or pleasure").  In
cases where the interval between injury and death is brief,
however, there is no basis for a separate award for hedonic

damages, which would at the most compensate for the decedent's inability to experience a few minutes of his life.  In such instances, evidence of the decedent's loss of enjoyment of life cannot justify a separate damages award, but may be relevant to assessing the decedent's pain and suffering.  See Sterner, 747 F. Supp. at 273;  Winter, 68 A.2d at 515.

The Court therefore predicts that, if Delaware law were to recognize a separate award for hedonic damages under any circumstances, it would not do so in a claim under the Survivor's Act like this one, where only a short interval elapsed between the decedent's injury and death.  In such cases, however, evidence of hedonic damages may be relevant to the calculation of pain and suffering.

The Court will, accordingly, grant the defendants' motion for summary judgment as to the plaintiff's separate claim for hedonic damages under the Survivor's Act.  The plaintiffs have stated in briefing and oral argument that, if they cannot bring a separate claim for hedonic damages, they will seek to introduce evidence of these damages as part of their Survivor's Act pain and suffering claim.  The defendants have stated that they intend to file a motion to exclude such evidence.  The Court will not address the admissibility of the plaintiffs' evidence of hedonic damages at this time, and its decision is without prejudice to the

defendants' ability to file a subsequent motion in limine seeking to exclude such damages.

      F     The Plaintiffs' Claims under the Survivor's Act for the <u>Decedent's Reasonable Medical Bills</u>

The plaintiffs in their amended complaint seek damages for "reasonable and necessary medical bills incurred in an attempt to revive or save" the decedent's life. Am. Compl. ¶ 86(b). The defendants seek to limit this claim to $4,251.80, which is the value of the medical bills set out in the plaintiffs' initial Rule 26 disclosures. The plaintiffs do not address this argument in their opposition. The Court will accordingly restrict the plaintiffs' claim for reasonable medical expenses under the Survivor's Act to $4,251.80.

      G     The Plaintiffs' Claims under the Survivor's Act for "Any <u>Other Damages Permitted by Law, Including Lost Wages"</u>

The "catch-all" paragraph of the plaintiffs' damages for their Survivor's Act claim requests "[a]ny other damages permitted by law, including lost wages." Am. Compl. ¶ 86(e). The defendants move for summary judgment both as to any claim for lost wages under the Survivor's Act and as to any claim for unspecified "other damages." The Court will grant summary judgment as to both aspects of the damages requested in this paragraph of the Amended Complaint.

The plaintiffs concede that Delaware courts have interpreted the Delaware Survivor's Act to allow damages for a decedent's lost wages only for those wages that would have been earned "from the time of [the decedent's] injury to the time of death." Coulson v. Shirks Motor Express Corp., 107 A.2d 922, 924 (Del. Super Ct. 1954); see also Pipher v. Burr, 1998 WL 110135 at *3 (Del. Super. Ct. Jan. 29, 1998) (both cited in Pl. Mem at 7).[2] Here, the time between John Jerry Ferguson, Jr.'s accident and his injury was too brief to allow a claim for lost earnings under the

_____

[2]     In a footnote in their opposition brief, the plaintiffs cite Loden v. Getty, 359 A.2d 161 (Del. 1976), as suggesting that future lost wages can be recoverable in a survival claim.  The plaintiffs concede that the decision is "anomalous" and acknowledge that subsequent Delaware intermediate appellate decisions have continued to hold that a plaintiff in a survivorship claim can recover lost wages only for the period between the decedent's injury and death.  See Pipher, 1998 WL 110135 at *3; Magee, 405 A.2d at 147.  The Court believes that Loden articulates a limited exception to the general rule set out in Pipher, Magee and other cases, and that the case is not applicable here.  The certified question in Loden was whether an administrator of the estate of a decedent who had been injured and instituted suit during his lifetime, but had subsequently died of his injuries, could be substituted as a plaintiff under the predecessor statute to the Survivor's Act and recover as damages "the present value of the projected loss of income over the life expectancy of the decedent less whatever would have been the cost of support and maintenance of the decedent over the same period of time."  Id. at 162 n.3.  The Loden court held that the administrator could be substituted as plaintiff and could assert a claim for the decedent's future lost wages, because the decedent would have been entitled to receive those damages in his existing suit, had he lived.  Id. at 163.  The Court interprets Loden as limited to cases where a decedent has brought suit on the claims at issue before dying and inapplicable to the more usual survivorship claims like those in Pipher, Magee, and here, where the claims at issue are brought for the first time after the decedent's death.

Survivor's Act.  The defendants are entitled to summary judgment on the plaintiffs' claim for such damages.

The defendants are also entitled to summary judgment on the plaintiffs' claim for "any other damages" under the Survivor's Act, for the same reason that they were entitled to summary judgment as to similar language in the plaintiffs' wrongful death claim.  The defendants have argued that the plaintiffs have identified no facts or legal theories in support of these unspecified "other" claims, and the plaintiffs have failed to respond to this argument in their opposition brief.  The Court will therefore grant summary judgment on this claim.

An appropriate Order will be issued separately.