IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KENNETH L. FERGUSON, et al.    :    CIVIL ACTION
                               :
        v.                     :
                               :
VALERO ENERGY CORP., et al.    :    NO. 06-540


MEMORANDUM

McLaughlin, J.                                    May 27, 2010


          This wrongful death and survivorship action arises out
of the death of a worker at the Delaware City Refinery ("DCR").
The plaintiffs filed this action in February 2006, and the Court
began a jury trial in February 2010.  On the third day of trial,
the Court granted the defendants' unopposed request for a
mistrial based upon the conduct of the plaintiffs' counsel, Wayne
A. Schaible, who violated several of the Court's prior orders and
rulings, resulting in prejudice to the defendants.

          The defendants bring a motion for sanctions against Mr.
Schaible and his law firm, McCann, Schaible & Wall, LLC, for Mr.
Schaible's trial conduct.  The defendants request that: (1) Mr.
Schaible and his firm pay the defendants' attorneys' fees and
costs, (2) Mr. Schaible and his firm pay the Court's costs in
preparing for and conducting two days of trial, and (3) Mr.
Schaible be disqualified from representing the plaintiffs in any
further proceedings in this matter.

The Court will grant in part and deny in part the defendants' motion. The Court grants the defendants' request that Mr. Schaible and his firm pay sanctions in the form of the defendants' attorneys' fees, costs and expenses associated with trial and with the filing of the instant motion. The Court denies the defendants' request for sanctions for the Court's costs and expenses.

The Court also denies as moot the defendants' request for sanctions in the form of disqualification of Mr. Schaible. The plaintiffs have represented that Mr. Schaible will not take part in the upcoming trial of this case, with the exception of previously recorded videotape testimony. This result will adequately protect the defendants' interests. The Court finds that disqualification is not necessary and would work a hardship on the plaintiffs.

I.  <u>Pretrial Proceedings</u>

This case concerns the death of twenty-nine-year-old boilermaker John Jerry Ferguson, Jr. Mr. Ferguson died in an accident at the DCR, in Delaware City, Delaware, on the night of November 5, 2005. At the time, the DCR was conducting a turnaround, an activity in which areas of the refinery are shut down for maintenance. Mr. Ferguson died of nitrogen asphyxiation

while working on one of the refinery's reactors in connection with the turnaround.

Mr. Ferguson was survived by two brothers, Kenneth and Michael Ferguson, and his father, John Jerry Ferguson, Sr. His brother Kenneth Ferguson brings claims under the Delaware Survivor's Act, 10 Del. Code § 3701, as administrator of his brother's estate and on behalf of any statutory beneficiaries. His father brings claims under the Delaware Wrongful Death Act, 10 Del. Code § 3724, in his own right and as the primary beneficiary under the statute.[1]

The defendants are Valero Energy Corporation ("Valero") and Premcor Refining Group, Inc. ("Premcor"). Premcor owned and operated the DCR. Valero merged with Premcor in September 2005, approximately two months prior to Mr. Ferguson's death.

A. <u>Prior Sanctions</u>

The Court has sanctioned Mr. Schaible for his conduct in this litigation once before. During discovery, the defendants submitted a letter to the Court raising concerns that Mr. Schaible was harassing deposition witnesses. They stated that Mr. Schaible's conduct included clapping at a witness during the witness's testimony and asking fact witnesses opinion questions

---

[1]     John Jerry Ferguson, Sr., passed away on April 22, 2006, after this suit was filed.

3

and questions on subjects and documents outside of their personal knowledge.

During an on-the-record telephone conference held on March 19, 2007, the Court discussed Mr. Schaible's behavior with counsel for both parties. The Court first addressed Mr. Schaible's clapping at a witness during the witness's deposition, a DVD recording of which had been provided to the Court prior to the call. The Court stated that such behavior was "obviously inappropriate" and told Mr. Schaible that it assumed that he "lost track of what [he was] doing . . . and that won't happen again." Transcript of Telephone Conference March 17, 2007, at 5:3-7. Mr. Schaible agreed and apologized to the Court and counsel.

The Court then discussed Mr. Schaible's inappropriate questioning of fact witnesses. This included asking a non-medical witness his opinion on autopsy photographs, asking witnesses about letters and press releases that they had neither drafted nor seen before their depositions, and asking non-executive employees questions about Valero's corporate profits and corporate charitable spending. When the defendants' counsel stated that Mr. Schaible's conduct was "improper opinion questioning from beginning to end," the Court agreed, stating that "it sounds that way to me, Mr. Schaible. I truly don't know

what is going on here.  If these are fact witnesses, you ask them about facts."  Id. at 10:19-23.

After Mr. Schaible was unable to articulate an adequate basis for his questions, the Court directed Mr. Schaible to refrain from such conduct in future depositions.  Finding Mr. Schaible's questioning to be improper, harassing, and a waste of time, the Court stated that it was "very disappointed" and warned that it did not "want to see anything more like this again."  Id. at 18:2-3.  The Court, however, did not sanction Mr. Schaible at that time.

On April 20, 2007, the plaintiffs deposed refinery foreman Tom Fitzpatrick.  Despite the Court's direct instructions, Mr. Schaible asked Mr. Fitzpatrick pages of questions about topics about which the witness had no personal knowledge, including the exact topics the Court addressed in the earlier conference call.  Counsel also asked numerous improper opinion questions.  The defendants' memorandum in support of its motion for sanctions contained ten pages of excerpts from the deposition that demonstrated the improper questioning.  Mr. Schaible's conduct was harassing and wasteful of everyone's time.  The defendants moved for sanctions pursuant to Rule 30(d)(3) of the Federal Rules of Civil Procedure.

In an Order dated July 17, 2007, the Court agreed that Mr. Schaible had violated its orders and granted the defendants' motion for sanctions.  The Court stated that it was

> very surprised by the conduct of Mr. Schaible at the
> deposition of Mr. Fitzpatrick.  This questioning was
> almost identical to the questioning that was the
> subject of an earlier motion and an on-the-record
> telephone conversation with counsel.  At that time, the
> Court sustained objections to the areas of questioning
> set forth in the defendants' motion and ordered Mr.
> Schaible in no uncertain terms not to repeat that
> conduct.  Mr. Schaible assured the Court that he would
> not.

Order of July 13, 2007 (Docket No. 83).  Although the Court explained that it "resists [sanctioning lawyers] as much as it can, as is evidenced by the fact that it did not sanction Mr. Schaible for the earlier harassment of witnesses," it "cannot see its orders disobeyed in this way."  Id.  The Court reiterated that "[t]here is nothing legitimate to be gained from asking these kinds of questions."  Id.


B.    The Court's Rulings on Motions in Limine

In the weeks leading up to trial, the parties submitted extensive motions in limine.  The plaintiffs filed a motion in limine (Docket No. 271) that asked the Court to preclude the defendants from offering evidence at trial on three different issues.  The defendants filed two motions in limine: (1) a motion in limine to admit certain evidence at trial (Docket No. 272), and (2) a motion in limine to exclude certain evidence at trial

(Docket No. 273). The Court heard argument and ruled on the plaintiffs' motion in limine to preclude evidence and the defendants' motion in limine to admit certain evidence on-the-record during the final pretrial hearing held on January 29, 2010.

In their motion in limine to exclude evidence, the defendants asked the Court to exclude evidence on 51 separate issues. The Court decided the defendants' motion over the course of several Orders, dated February 3, 2010, February 12, 2010, and February 15, 2010.

In the three Orders, the Court barred the plaintiffs from introducing certain categories of evidence in their case-in-chief. Several of these rulings are relevant to the instant motion. In its Order of February 3, 2010, the Court barred discussion of whether Valero's interest in pursuing corporate profits after hurricanes Katrina and Rita contributed to the death of Mr. Ferguson. The Court explained that the plaintiffs had failed to provide foundation evidence showing that the alleged pursuit of corporate profits caused or was even related to Mr. Ferguson's death in any way. The Court did leave open the possibility that it might allow the plaintiffs to present such evidence but only after the plaintiffs presented a proper foundation for such testimony to the Court.

In the same Order, the Court prohibited the introduction of evidence of personnel shortages during the turnaround. The plaintiffs sought to introduce evidence that several safety personnel were absent on the day of the accident and that additional personnel should have been hired. The plaintiffs had failed to connect the absence of any individual to the accident. The Court found that, "in order for any evidence of missing personnel to be relevant, the plaintiffs must show how that evidence would even relate to Mr. Ferguson's death, let alone be the cause of it." The Court again left open the possibility that it "would consider evidence as to particular personnel whose presence could have made a difference at the time," but emphasized "that the plaintiffs have not presented any so far."

Also in the February 3 Order, the Court ruled that evidence of procedures at other Valero refineries, such as the safety procedures at the Paulsboro refinery, was inadmissible and expressly prohibited the introduction of such evidence. The plaintiffs had provided no foundation evidence establishing that the procedures at other Valero refineries were the industry standard or that there was an expectation that they would be

implemented at the DCR.  Evidence of such procedures, therefore, were not relevant to this litigation.[2]

The Court similarly prohibited the introduction of evidence of prior nitrogen incidents at Valero refineries.  The Court explained that the plaintiffs had not met their burden of showing that these incidents were similar incidents under Rule 404(b) of the Federal Rules of Evidence.  Furthermore, even if such evidence were probative of an issue in this case, the Court ruled that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice to the defendants. The Court also found that such evidence would confuse the jury and lead to trials within the trial as the parties disputed the facts of the prior incidents.

The Court refrained from deciding the admissibility of evidence involving the use of "manway lockout devices" or "area re monitors" until the trial so that the Court could make its decision in context.[3]

---

[2]     The Court, however, did allow the plaintiffs to introduce evidence of Valero's corporate nitrogen procedure -- SHG-13, which the Court ruled was relevant as an example of the defendants' view of an appropriate nitrogen procedure.

[3]     In its Order of February 15, 2010, the Court explained:

> In ruling on the fifty-one 'issues' raised
> by the defendants, the Court has ruled on
> whether the evidence at issue can be
> introduced in the plaintiffs' case-in-chief
> on the basis of the argument and evidence
> presented to the Court.  In doing so, the

II.  <u>The Trial</u>

A jury trial began on February 16, 2010, and was
scheduled to run for up to four weeks.  On February 17, 2010, the
second day of trial, Mr. Schaible gave the plaintiffs' opening
statement and questioned the first two witnesses.  During his
opening and throughout his questioning, Mr. Schaible violated
several of the Court's evidentiary rulings, incurred over 30
sustained objections, violated the Court's rulings and
instructions at trial and exposed the jury to a number of
excluded evidentiary issues, improper questions and inflammatory
statements.[4]

_____

Court is not foreclosing the possibility
that some of these individual items of
evidence that have otherwise been ruled
inadmissible might be admissible to respond
to evidence from the defendants, whether as
impeachment or to show bias or for some
other purpose permitted by the Federal
Rules of Evidence.  The Court, however,
cannot rule on such possible admissibility
until a foundation for using the evidence
for these purposes has been laid.  If the
plaintiffs wish to introduce otherwise
inadmissible evidence for impeachment or
similar purposes, then they must seek a
ruling from the Court before seeking to
introduce it.

[4]     For example, in the first few sentences of his opening
statement, Mr. Schaible referred to "4 years of litigation" and
stated that he had taken "well over 100 depositions," facts that
would be unlikely to be admitted at trial.  Transcript of Trial,
February 17, 2010 ("Trial Trans. I"), at 31:24-25.  Mr. Schaible
also introduced the inflammatory hypothetical of pumping nitrogen
into the courtroom and placing the jury in the position of a
person dying of nitrogen asphyxiation.  He described how, if

Early in his opening statement, Mr. Schaible discussed the effect of hurricanes Katrina and Rita on the refining industry, a subject directly linked to the plaintiffs' prohibited corporate profits argument.[5] Mr. Schaible mentioned how the hurricanes had "wiped out all of the refining capacity" in Texas and the Gulf Coast. He also stated "we all remember what happened to the gasoline market after Hurricane Katrina." Id. at 36:24-25. The defendants objected to the statements, and the Court sustained the objection at sidebar and told Mr. Schaible to "cut out [the] topic." Id. at 37:16-38:3.

Mr. Schaible went on repeatedly to refer to evidence of personnel shortages in violation of the Court's orders. He first stated that two Valero employees were absent on the day of the accident. The defendants objected, and the Court sustained the objection. Id. at 41:17-44:15. Despite the defendants' sustained objection, Mr. Schaible returned to the topic of personnel shortages and stated that two other employees were not present on the day of the accident. The defendants objected, and

---

nitrogen were to be pumped into the courtroom, "it would displace . . . every bit of oxygen in here" and warned that the nitrogen would begin to cause "adverse physiological consequences" that included "convulsions, blindness, and death" and, eventually, "you would stand here and suffocate in clean air." Id. at 34:23-35:10, 35:17-18.

[5]     See Plaintiffs' Opposition to the Defendants' Motion In Limine to Exclude Certain Evidence at Trial ("Pls. Opp'n") at 12-14.

the Court again instructed Mr. Schaible not to discuss the issue, saying "please do not discuss that." Id. at 55:9-15. Mr. Schaible, however, made a third reference to personnel shortages, stating that Valero was "trying to play catchup, they were overscheduled, they were behind. Personnel shortages, what goes first, the time consuming and personnel consuming safety precautions." Id. at 61:22-25.

Additionally, Mr. Schaible repeatedly introduced the subject of manway lockout devices. Id. at 51:2, 51:13-14, 51:23, 61:5, 61:9-10. At one point, Mr. Schaible even mentioned manway lockout devices as they related to the prohibited topic of other Valero refinery procedures, stating that manway lockout devices "were available just a short distance away at a sister refinery in Paulsboro." Id. at 62:1-7. Finally, Mr. Schaible discussed the use of area rae monitors on two occasions, without presenting the Court with the opportunity to judge the admissibility of such evidence in context, as ordered. Id. at 52:14-15, 62:6-7.

In total, Mr. Schaible violated at least five of the Court's in limine rulings in his opening statement, and the defendants objected to Mr. Schaible's opening on three separate occasions, all of which were sustained. Id. at 37:5-38:15, 42:22-44:15, 55:12-15.

The defendants moved for a mistrial at the conclusion of openings, on the ground that Mr. Schaible's violations of the

Court's orders prejudiced the jury.  Id. at 95:25-99:5.  The
Court admonished Mr. Schaible, stating that it was "very, very
concerned that there was a violation of a variety of [the
Court's] orders."  Id. at 99:23-104:16.  When Mr. Schaible
attempted to justify his conduct by stating that the Court had
left open the possibility of admitting certain evidence, such as
manway lockout devices, in its orders, the Court responded, "But,
sir, you never met with the notion that when a Judge bars
something, until she says that it's admissible, that you
shouldn't say that in opening?"  Id. at 101:8-10.  The Court
stated that it would take the defendants' motion under
advisement.

        The Court held a recess for lunch and then met with all
counsel in chambers to discuss the defendants' oral motion for a
mistrial.  At the conference, Mr. Schaible assured the Court that
his conduct would not be repeated.  Trial Trans. II at 6:12-
7:14.[6]

        Based in part on Mr. Schaible's assurances, the
defendants withdrew their motion, but requested that the Court
read an instruction to the jury.  The Court agreed and instructed
the jury that, "[d]uring the course of Mr. Schaible's opening, he

_____

        [6]     Defense counsel described the events that occurred in
chambers on the record.  The Court stated for the record that
defense counsel "accurately described what went on in chambers."
Trial Trans. II at 17:4-6.

made certain statements that should not have been made and that were improper." The Court reminded the jury that counsels' statements in openings and closings are not evidence. Trial Trans. I at 108:16-21.

Despite his assurances that his conduct would not be repeated, Mr. Schaible proceeded to violate the Court's evidentiary orders, to ask improper opinion questions and to disregard the Court's prior instructions during the questioning of the first two witnesses, John Ward and Herbert Netsch.

Mr. Schaible made three more references to personnel shortages during his questioning of Mr. Ward, despite the fact that the Court had told him on several occasions that the subject was off-limits. The defendants objected each time, and the Court sustained those objections. Id. at 123:5-14, 175:14-20, 181:15-20, 181:22-25. Mr. Schaible also asked Mr. Ward about his knowledge of alleged past nitrogen incidents at the refinery, another subject explicitly excluded by the Court's orders. The defendants objected, and the Court sustained that objection. Id. at 173:2-25.

In addition to violating the Court's orders, Mr. Schaible asked detailed questions on topics about which Mr. Ward had no personal knowledge. For example, he asked Mr. Ward, who worked the day shift at the refinery, "Do you know what, if anything, was done particularly during the nighttime shift when

14

you weren't there, to make sure that nobody was skipping these time consuming safety procedures . . . ?" Id. at 183:18-21 (emphasis added). The Court reminded Mr. Schaible that Mr. Ward could "only testify about what he knows." Soon after, however, Mr. Schaible questioned Mr. Ward a second time about circumstances during the nightshift. Id. at 184:4-5, 184:13-15, 184:21-22.[7] By the time Mr. Schaible was through with his questioning of Mr. Ward, defense counsel had made over 20 sustained objections.[8]

Mr. Schaible then questioned Mr. Netsch. During the questioning, defense counsel made six sustained objections to Mr. Schaible's questions, and the Court held two sidebar discussions with counsel. Id. at 197:18-20, 198:18-20, 199:12-14, 200:5-24, 202:2-3, 202:9-15. At the second sidebar, defense counsel stated his concern that there had been "a continuing pattern of asking questions [for] which there's no foundation, in which the lawyer, Mr. Schaible, is basically testifying." Id. at 202:16-19. The Court responded, "Yes. I know. There is. It's very disturbing. It's very disturbing. I'm thinking about what to do about

---

[7]     Mr. Schaible also asked Mr. Ward to speculate as to evidence of actions that others may have taken or decisions that others may have made, of which Mr. Ward had no personal knowledge. Id. at 185:10-186:2.

[8]     During a sidebar conducted after Mr. Ward's testimony, the Court admonished Mr. Schaible for his practice of walking away while he was being addressed by the Court. Id. at 193:15-17, 194:10-11.

it . . . to be quite frank." Id. at 202:20-21, 202:24-25.

Defense counsel made one more sustained objection before Mr.

Schaible finished his questioning.  Id. at 205:24-25.

Defense counsel moved for a mistrial the next morning,

prior to the start of further testimony.  After describing the

previous day's events in detail, the defendants argued that, as a

result of Mr. Schaible's prejudicial conduct, they could not get

a fair hearing from the jury.  Trial Test. II at 10:21-22.

Plaintiffs' counsel did not object.  Instead, Brian

Wall, Mr. Schaible's partner, responded:

> [I]f Your Honor believes that the – that there was
> prejudice to the defendants as a result of [Mr.
> Schaible's] questioning, then Your Honor – if Your
> Honor's inclined to grant the mistrial, we are not
> going to object on that basis because we do not want
> there to be an issue at a later point about prejudice
> to the defendants. . . . [W]e don't want to be
> litigating at a later point prejudicial points that
> were raised – and done, perhaps, if for no other reason
> than to protect the record – sometime down the road
> when that could have been cured after one day of trial,
> and so we leave that to the Court's discretion.

Id. at 13:24-14:10.  The Court asked Mr. Wall to clarify that the

plaintiffs did not object to a mistrial.  Mr. Wall confirmed that

"[i]f [the defendants] move for a mistral and Your Honor is

inclined to grant it, we're not going to oppose it."  Id. at

14:13-15.[9]

---

[9]    The plaintiffs' opposition to the defendants' motion
for sanctions states that the plaintiffs "did not oppose the
declaration of a mistrial for strategic reasons which were
unrelated to Defendants' objections."  Plaintiffs' and

The Court granted the defendants' request for a mistrial. The Court stated that, even if the plaintiffs had objected, the Court would still have granted the defendants' request. Id. at 15:4-7. The Court reiterated that it found the events of the previous day "very disturbing" and explained that "I think it's my responsibility to make sure that everybody in this courtroom gets a fair trial, and I was concerned that that was not happening yesterday." Id. at 16-19. Although the defendants' first motion for a mistrial had been withdrawn, the Court recognized that it must consider the "cumulative effect" of previous conduct when considering the effect of later improper conduct on the jury. Id. at 15:7-10.

## III. Analysis

The defendants move for sanctions against Mr. Schaible and his firm, pursuant to 28 U.S.C. § 1927 and the Court's inherent power to discipline attorneys who appear before it, arguing that the mistrial was the sole result of Mr. Schaible's misconduct and that Mr. Schaible and his firm should be sanctioned for such misconduct. The sanctions they seek are monetary damages and the disqualification of Mr. Schaible.

---

Plaintiffs' Counsel Brief in Opposition to Defendants' Motion for Sanctions ("Pl. Br.") at 11. That statement, however, is contradicted by Mr. Wall's explanation at trial.

A.    Monetary Damages

Section 1927 provides:

> Any attorney or other person admitted to
> conduct cases in any court of the United
> States or any Territory thereof who so
> multiplies the proceedings in any case
> unreasonably and vexatiously may be required
> by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

To violate § 1927, an attorney must be found to have: "(1)

multiplied proceedings; (2) in an unreasonable and vexatious

manner; (3) thereby increasing the cost of the proceedings; and

(4) doing so in bad faith or by intentional misconduct."  In re

Schaefer Salt Recovery, Inc., 542 F.3d 90, 101 (3d Cir. 2008).

The United States Court of Appeals for the Third

Circuit has held that "sanctions may not be imposed under § 1927

absent a finding that counsel's conduct resulted from bad faith,

rather than misunderstanding, bad judgment, or well-intentioned

zeal." Grider v. Keystone Health Plan Central, Inc., 580 F.3d

119, 142 (3d Cir. 2009).  Under § 1927, an attorney's conduct

"must be of an egregious nature, stamped by bad faith that is

violative of recognized standards in the conduct of litigation."

Id.

A federal court may also impose sanctions under its

inherent power to discipline attorneys who appear before it.  In

re Prudential Ins. Co. America Sales Practice Litigation Agent

Actions, 278 F.3d 175, 188-189 (3d Cir. 2002).  The circumstances

that justify sanctions under this inherent power include "cases where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 189 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). A court may impose sanctions under this inherent power even if much of the misconduct at issue is also sanctionable under statute or rules of court. The Court of Appeals, however, has stated that the exercise of a court's inherent power to impose sanctions "should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." Id.

The defendants request that, under either § 1927 or its inherent power, the Court order sanctions against Mr. Schaible and his firm for eleven items related to the fees, costs and expenses of trial and the drafting of this motion. They request that Mr. Schaible and his law firm be jointly and severally liable for paying these expenses and be required to pay within 30 days of the entry of an appropriate order by the Court. The defendants also request that Mr. Schaible and his firm pay the Court's trial costs.

The plaintiffs and plaintiffs' counsel[10] argue that Mr. Schaible's conduct was not in bad faith, did not violate the

---

[10]     The plaintiffs and plaintiffs' counsel are represented by independent counsel for the purposes of this motion.

Court's orders, and represents nothing more than zealous advocacy for his clients.[11]

Mr. Schaible's challenged conduct can be grouped into three categories: (1) violations of the Court's orders and rulings, (2) the disrespect he showed the Court by repeatedly walking away from sidebar while being addressed by the Court, and (3) his questioning of Mr. Ward and Mr. Netsch that was objectionable for reasons other than that it was in violation of Court orders. The Court will consider only the conduct constituting the first of these categories as a basis for sanctions.[12]

---

[11] The plaintiffs' brief accuses the defendants of violating several of the Court's in limine rulings and states that the defendants' counsel's conduct over the course of the litigation "constitutes an egregious abuse of the judicial system." Pl. Br. at 5. The conduct of the defendants' counsel, however, is not at issue here.

The plaintiffs' brief also argues that "the mistrial was not based on any substantive misconduct by Plaintiffs or their counsel but on a mutually agreed procedural result." Pl. Br. at 11. This statement is contradicted by the defendants' stated reasons for moving for a mistrial, the plaintiffs' stated reasons for not objecting to the mistrial, and the Court's stated reasons for granting the defendants' request for a mistrial.

[12] Although the Court could have held Mr. Schaible in contempt for his repeated walking away from the Court before the sidebar discussion was over, the Court did not do so, so it will not sanction counsel now for that conduct. The jury was not aware of what was going on at sidebar so the defendants were not prejudiced by it. Nor will the Court consider as a basis for sanctions the objectionable questions counsel asked that were not in violation of Court orders. The Court does expect, however, that at the second trial, all counsel will prepare their questions in compliance with the Federal Rules of Evidence.

The Court finds that Mr. Schaible did multiply proceedings, in an unreasonable and vexatious manner, thereby increasing the cost of the proceedings.  The Court finds that Mr. Schaible did so in bad faith and by intentional misconduct.  <u>See In re Schaefer Salt Recovery, Inc.</u>, 542 F.3d at 101.  The Court, therefore, grants the defendants' request for attorneys' fees, costs and expenses.

Mr. Schaible's conduct multiplied proceedings.  His conduct alone caused the mistrial in this case, postponing the litigation for months and leading to additional motion practice.  The proceedings were multiplied in an unreasonable and vexatious manner because they were multiplied due to Mr. Schaible's failure to obey the Court's orders and rulings.  Mr. Schaible's conduct increased the cost of the proceedings.  This case has to be retried, and all of the expenses of the first attempt to hold a trial have been wasted.

With respect to the question of bad faith or intentional misconduct, the Court offered to have a hearing at which Mr. Schaible could testify to explain his conduct.  Mr. Schaible did not avail himself of this opportunity.  Instead, he provided an affidavit in which he states that he did not intend to violate the Court's orders or to show disrespect to the Court and that he believed that his opening remarks and questions were

in accordance with the Court's rulings. He states that his sole intent was to act as a zealous advocate for his client.

The Court gives little weight to the affidavit for several reasons. First, it strains credulity to think that a lawyer of Mr. Schaible's experience could so fundamentally misunderstand or misinterpret the Court's orders. Second, even if Mr. Schaible misunderstood the Court's pretrial rulings, there was no room for misunderstanding after the Court sustained the defendants' many objections, held several discussions with counsel at sidebar, explicitly instructed Mr. Schaible to avoid certain topics (such as personnel shortages), and held an hour-long in-chambers conference discussing his behavior. Third, a conclusory affidavit submitted instead of testimony that is subject to cross-examination is not persuasive.

Lawyers must remember that no matter how valid they believe their client's case or defense is, they must advocate within the rules of our system of justice. Those rules require that lawyers obey Court orders. A trial has very specific rules, and it is fundamentally unfair for one party's lawyer to disobey those rules to the detriment of the other party. That unfairness is especially egregious when done in front of the jury. Such conduct forces the other lawyer either to object repeatedly, which may annoy the jury, or to allow the improper conduct to continue.

The Court declines to impose sanctions on the plaintiffs for the Court's costs in conducting the trial.


B.   Disqualification

A federal district court also has the power to disqualify an attorney.  United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980).  Like the Court's inherent power to impose sanctions, this power is based on the court's inherent authority to supervise the professional conduct of attorneys appearing before it.  Id.

A court may disqualify an attorney for violating a disciplinary rule.  Disqualification is not automatic when a disciplinary rule has been violated.  A court should disqualify an attorney only when it determines that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve along with any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions. Id. at 1201.

The defendants argue that Mr. Schaible should be disqualified because he violated several of Pennsylvania's Rules of Professional Conduct relating to the unnecessary obstruction

of judicial proceedings and the administration of justice.[13] Specifically, they argue that Mr. Schaible violated (1) Rule 3.2, which requires a lawyer to make reasonable efforts to expedite litigation; (2) Rule 3.5(d), which provides that a lawyer shall not engage in conduct intended to disrupt a tribunal; and (3) Rule 8.4(d), which provides that it is professional misconduct to engage in conduct that is prejudicial to the administration of justice. The defendants also argue that Mr. Schaible violated the portion of the Rules' preamble that states that a lawyer should demonstrate respect for the legal system, judges, other lawyers and public officials. Finally, the defendants urge that Mr. Schaible be disqualified because his behavior at trial is part of a pattern of misconduct for which he has already been sanctioned by the Court.

The Court finds that disqualification is not necessary in this case, because the defendants' request is, to a large extent, mooted by the plaintiffs' representation that Mr. Schaible will be replaced as lead counsel at trial by his partners, Mr. McCann and Mr. Wall. Pls. Br. at 24 n.5. The Court reads the plaintiffs' statement to mean that Mr. Schaible will not appear before the Court in any manner during the forthcoming trial in this case, with the limited exception of

---

[13]     The United States District Court for the Eastern District of Pennsylvania incorporates the Pennsylvania Rules of Professional Conduct through its local rules. <u>See</u> E.D. Pa. Local R. 83.6(IV)(B).

previously videotaped deposition testimony. This result should alleviate the defendants' concerns. The Court will not go further and disqualify Mr. Schaible entirely from participating in the preparation of the case for trial. Mr. Schaible has represented the plaintiffs from the outset, and it would be prejudicial to the plaintiffs, who are not to blame for Mr. Schaible's behavior at trial, to disqualify Mr. Schaible entirely from representing them in this case.

The Court also wishes to make it clear to the attorneys taking Mr. Schaible's place as lead counsel for the plaintiffs, Mr. McCann and Mr. Wall, that all counsel who appear before the Court are expected to understand and comply with the Federal Rules of Evidence, to strictly adhere to the Court's evidentiary orders and rulings, and to treat opposing counsel, witnesses and the Court with the highest degree of respect and civility.[14]   The

---

[14]   Because of the large number of objectionable questions asked of the first two witnesses during the first trial, and of the witnesses during the depositions in this case, the Court sets out here certain basic rules of testimony that Mr. Schaible disregarded.  Rule 602 states that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." A witness may not testify about what he or she heard happened, or speculated may have happened.

Hearsay is not admissible unless it fits within certain exceptions to the hearsay rule.  Whether a witness is "aware" that something happened is usually not relevant.  At times, awareness may be relevant to show notice when notice is relevant. But Mr. Schaible asked a witness during the first trial whether he was "aware" that certain things happened.  It was not relevant in that context.

Court will not tolerate a repeat performance of the behavior it saw in February.

        An appropriate order follows separately.

---

      All lawyers must have a copy of the Federal Rules of Evidence during the trial.